23905 Structured Asset Sales, LLC v. Sheeran. Good morning, your honors. May it please the court. My name is Hillel Parness and I represent the appellant. On May 16, 2023, the District Court granted Appelee's motion for re-argument and granted Appelee's motion for re-argument. We are asking the court to reverse that decision among several others. This is a case of copyright infringement. Appellant, my client, claims that thinking out loud infringes the copyright in the musical composition Let's Get It On and that Edward Sheeran and Amy Wadge copied Let's Get It On when writing Thinking Out Loud. Whether I or my friends or anyone else believes that is irrelevant. The only ones who would matter here would be the jury. And that decision was taken away from my jury by a series of errors that bring us here today. The deposit copy error, which we'll talk about, limited the court's focus to the 1973 handwritten sheet music, taking away the jury's power to decide the scope of the copyright in the musical composition. Yes, your honor. Is the 1909 Copyright Act clear that that is what the only thing we look at and not at the later thing? I know they do in Europe, but isn't the way our law is written absolutely clear that it is only the original, that it is only the original? And that if we go beyond it, we have no idea what could be considered? No, your honor. With respect, I don't believe that's correct. The 1909 Act, and specifically in sections 12 and 13 dealing with unpublished and published works, do not speak to whether the deposit copy defines the scope of the copyright or of copyright protection. It says you must submit a copy. That's what it says. That's a prerequisite for getting a registration. In fact, back then, there's another section about if you fail to do so, they would send you a warning, and then you could be fined $100. I think it was $25, went up to $100 by 1973. But no, our position is that the statute simply doesn't say that, and that any case law that comes afterward, and I've gone through it in my opening brief in great detail, the case law and the compendium on which the district court judge here relied upon, and then in the Skidmore case from the Ninth Circuit, which he very much relied upon, and their authorities, none of them changed that analysis. And in fact, to, I think, answer the second part of your question, Your Honor, we already, and have always, litigated copyright cases here without having deposit copies. As I pointed out in my brief, there are now 20 different categories where the Copyright Office says you do not need to submit a full copy, and yet those cases all go forward. A big example is computer code. You only have to put in the first 10 and last 10 pages of the code. So the copy that's actually on file often bears no resemblance to the things that you end up fighting about. But what is it, how do we know how far, what it is that we're fighting about, if it isn't something that's there? I mean, what grounds, apart from the fact you're asking us to do a split with the Ninth Circuit, which may be an advantage always. But leave that aside, how far do we go? Well, Your Honor, it's going to depend on the facts of every case, and it's going to come in through testimony and evidence. That would mean that every case would get to a jury, wouldn't it? Well, not necessarily. I think that it would get to a jury if you have a real question about it. So, for example, in the Merrill v. Tice case from 1881, which both the Skidmore court and our court here enjoy, that was about a book. And when it comes to books, there's no question about what the thing is. The book is the words in the book. Musical compositions, however, are a very different animal. And they've always been a very different animal. And in fact, in the treatise Schafter that my friends cited and I cited back in my brief from 1932, he specifically says that the pen and ink is not the thing. The pen and ink are trying to capture the thing, but they are not the thing. And the example that I gave also, that under the Berne Convention, under our compliance with the Berne Convention, we allow foreign works to be litigated here, infringement of foreign works to be litigated here. And if they arise in a jurisdiction, for example, Russia, I happen to know that in Russia, you do not, there is no registration system. Yeah, there's no doubt that the foreign way of doing it is the way you describe. Well, no, but when that case comes here, Your Honor, we litigate that case here without a registration, without a deposit copy. It happens through the evidence. The Three Boys music case from the Ninth Circuit, which I do believe we should split with, but the Three Boys music case from the Ninth Circuit is a great illustration of this. The amicus in this case spent some time talking about it. The other side here spent some time talking about it. But the Three Boys music case was a situation where there was a similar dispute about whether the deposit copy included everything it was supposed to include. That court, the district court there, allowed the experts to opine on it, as I thought the experts should be allowed to opine. Here, it went to the jury. The jury decided what the scope was. And the Ninth Circuit said we will not disturb the jury verdict. We will not disturb that decision because that's the process that I think should be followed. Again, first of all, we think the ruling should be reversed entirely. The deposit copy should not be limiting. But even if you were inclined to agree with the Ninth Circuit, and for all the reasons in my brief, I don't think you should, but even if you were inclined to agree with the Ninth Circuit, it should still be a situation where my experts are allowed to testify, hear specifically about how skilled musicians would play it. We should not be leaving it up to lay people. Why is that? So let's just go with the assumption now that the deposit copy limits the scope of the registration. Sure. Then we have the music and we have the elements of, I guess, the two here, the chord progression and the harmonic rhythm. Why do we need then to, it seems like your experts are trying to smuggle in all the stuff that is outside the deposit copy when now we have a limited scope? The whole point is to have a limited scope of what is actually registered. And I appreciate the question, Your Honor. That's certainly the view of the district court here. They didn't use the word, he didn't use the word smuggle, but he used a similar word. But my musicology experts, skilled in the art, testified or would have testified, they put it in their original reports, as to how skilled musicians would play the sheet music. When they saw the music, they would play a bass line of a certain type. And that we should have allowed that, again, assuming that deposit copy is the rule, we should have allowed that testimony to come in so the jury could hear it, so they could cross-examine those witnesses, and the jury could decide. So I understand a skilled musician is imagining how they would add a bass line to what is written on the paper. My experts in their reports and would have testified that a skilled musician, in seeing the annotations on the paper, would know what bass line to play and would play it. Yes? I don't understand what, under your theory, if you don't have the deposit copy, what would be the point of departure in subsequent suits? I mean, what would the district court be comparing the piece of music under controversy to if you didn't have that? Well, again, we have a very good example in the case of foreign works, which I briefed in my brief. The U.S., here in the U.S., we allow suits to be brought here based on infringements of foreign works, works that arose in other jurisdictions, and we abide by the rules of that jurisdiction. So, for example- But those rules are different. Oh, I understand. When that case comes here, though, for litigation, we do not require, if it comes from a jurisdiction that does not have a registration system, does not have a deposit copy, we don't require it. We litigate the case on- Well, we do the best we can- We do, Your Honor. In that circumstance, but why should that be the rule that we can do better? Well, I think it should be the rule for a lot of reasons, including that it's not in the statute, but also for fairness, Your Honor. When we litigate, there are massive cases about computer code infringement, Your Honor. I'm sure you're familiar with some of them. The computer code that is on file with the Copyright Office does not include massive swaths of the code. It usually excludes most of it, usually the most sensitive things. So when we end up litigating copyright cases based on infringement of computer code, the deposit copy is worthless. The deposit copy does nothing for us. And in the other 19 categories that the compendium recognizes that they will allow evidence- they will allow deposit copies that indicate but don't include the entire work, in all 20 of those categories, that's how we litigate the case. We don't litigate it based on the deposit copy. If we happen to be in a case where the deposit is a book, right, a book, we all know what the book is. The words are on the page. There's not going to be a dispute about that. On the selection and arrangement theory, so again, assuming if we're limited to just the two elements which are themselves not protected, is your argument that a progression of four chords to a certain time is itself protectable? Again, it's not to a certain time, but it's to a certain syncopation. But I do recognize it's a narrow bridge that I'm walking on. I do recognize that. We only get there, of course, because of the sequence of decisions that preceded it. But I'm operating in that hypothetical. Four chords syncopated in a certain way is enough. That seems quite wrong. I mean, those are both independent, not protectable. I understand where you're coming from on that, and I understand where the district court came from on it. But that brings me to another one of the important errors here, which is the district court before the Griffin trial, which my client was not a party to because we're not allowed to be a party to it. Before the Griffin trial, the judge in my case said— Just to clarify, you did try to be a part of that? We did, and Judge— But you were late. Well, Judge Sullivan at the time denied it in 2018, saying the case was too far along. Ironically, that case didn't go to trial until 2023. But, yes, Judge Sullivan said no. We later asked for consolidation. That was also denied by Judge Stanton. But because intervention was denied and this court affirmed it, we had to file our own suit. Can I ask, if that trial had gone the other way, would your client have gotten a piece of that recovery? I don't know the answer to that. I think he certainly would have expected one. But perhaps we would have needed to— You're saying that, however, res judicata or collateral estoppel does not apply, and so that we don't need— I mean, we know what happened there, but that doesn't bind us in your case. Well, let me begin by saying that my friends have not argued collateral estoppel or res judicata. But, yes, I do not believe collateral estoppel or res judicata applies here. Not only were we not parties to that case, we wanted to be and we were not allowed to be. But what did happen, though, and I brief this, is that before that case, the district court judge in my case said we had a material question of fact, a dispute among the experts about whether that combination, Your Honor, was common or not. And that commonality speaks to originality as a result, which is necessary for infringement. He said there was a material question of fact before the Griffin trial. After the Griffin trial, without any explanation of why or how he changed his mind, he says there's no dispute. He says that the combination is common. Well, we often change our minds. Sometimes we get wiser later on. It's possible, but if he got wiser because he was the presiding judge on the Griffin trial, we would have great concern about that. But regardless, I would say that if a federal judge can be of two minds about this issue, first saying there's a disputed question of fact and then somehow saying, without any citation to new facts or new evidence, that there's no disputed question of fact, isn't that a quintessential question of fact that should have gone to the jury? He may also have been wrong on talking about numerosity as being the telling thing as against what it really was, whether this line was or was not. But even if he was wrong on numerosity, what is there about this that was genuinely original in relation to the whole thing? That is, if we are stuck with the 1909 and we see what there is here, what is there that leads us to say that there was sufficient originality? Understood. And what we have is my experts saying that it is uncommon, addressing their experts' prior art, their experts saying that it is common. But is that a fact for experts to say or is it just something? I mean, in any number of these copyright things, if they weren't music, we would look and say, you know, what is it like? Now, music, I can't hear anything, so I'm not a good judge. But still, you know, you can tell whether a baseline is really that different from somebody else's. Understood, Your Honor. And we submit the jury should have been given that question. You've reserved some time for rebuttal. Thank you. Let me make sure that Your Honors can hear me. Good morning, Your Honors. Don Zachrin for the appellee from Prior Cashman. As is typical for me, I'm going to now sort of junk what I was going to start with and try to respond to some of the points that were raised by my colleague over here. First of all, his experts acknowledged that it was common in this combination. They acknowledged that there were prior uses of this exact chord progression and anticipation. And indeed, one of those uses happened to be a Motown song by the Temptations. And interestingly enough, Ed Townsend and Marvin Gaye were on Motown. And Let's Get It On was on Motown. They were aware of it. And that brings to mind the other point, which is this combination. And Judge Stanton held it really wasn't a combination because any chord progression has to be played at some rhythm. And there's not an unlimited number of rhythms. So putting the chord progression together, which is commonplace, with anticipation, which is just the rhythm at which the chords are played, is anticipation has been around for hundreds of years. So two elements isn't enough for a selection and arrangement claim. How many do you need? Your Honor, we have not seen any case that has found or awarded a selection and arrangement copyright award where there's less than four or five. We haven't seen any. We've seen two specifically said is not enough. We have not seen any. And can I ask, what's the basis for that? How do you get four and five as the tipping point where there's enough? I'm not saying it is the tipping point. I'm saying that we have seen a case that said five is enough. We've seen a case where five is not enough. My problem is I have trouble with numerosity. I can imagine that somebody would have something which is the only one, but which is so odd that you'd say this is genuinely original. I don't see it here. And I agree, Your Honor. That is, I think focusing on numbers gets into the kind of question that the presider said, how many is enough and how many is not. The question is, is what it was sufficiently original that it warrants something? And that's consistent with Judge Stanton's decision. He said there's no bright line for numbers, but that in this context with these two elements, which are commonplace, both of them, and have been used before, two is just not enough, particularly because the two merge into one because it's just the chord progression played at a particular rhythm. There's nothing unusual about it. It's been done. Yeah, but when we say there's, I understand your point, but when we say, if you're asking us to say there's a numerosity requirement, but there's no number, that it sounds like an oxymoron. Well, I understand that, Your Honor, but I do think there is a numerosity requirement, and I think the purpose of the numerosity requirement, let's back up for a second and remember what we're talking about. We're talking about musical elements, basic music building blocks that are not themselves protectable. You can't protect, it's not copyrightable. Chord progression is not standing alone copyrightable. The rhythm at which a chord progression, anticipation for hundreds of years, it's PD. Both of them are PD. So we're making an exception. We're saying if, and it comes from Feist, and Feist looked at three elements, name, address, phone number for a phone book, but Feist was really the first that said, you know, you can have a copyright if you select from a large enough body of material and arrange those elements in an unusual or original way. But that's an exception because you're talking about granting copyright protection to a combination of elements that themselves are not protectable. So the court, and Feist was very clear as well, it's not a substantial similarity test either anymore. It's are they the same? And the Ninth Circuit has interpreted that as identical or virtually identical. And I think they are right, and I think Feist is right. If the test is unusual or original or somehow unique, isn't that a jury question? No, because if you have, look, there's two reasons why in this case it's not. In this case in particular, their experts did no prior art analysis. And their experts in Emotion and Limity were barred from testifying or from any evidence that the LGO combination, that the chord progression and the harmonic rhythm were unusual or uncommon or anything of the like, specifically barred because they didn't do the work. They could respond to our evidence. So the only evidence in the record was that it was not original. It was not the first to do it. There were other songs before and after LGO that used this exact combination. So it wasn't something that was unusual. Judge Stanton certainly took that into account, but I think he was eminently correct, eminently correct in examining is this really a selection and arrangement? Is this, these two elements together, in this context, chord progression, rhythm at which the chords are played, in this context, is that really two elements? Is that a combination? Is that something that is original? And he decided, and I think correctly, in this case, these two elements merge into one. It is not really a combination. It's essentially one thing. And we're not protecting one thing because we'd be granting a monopoly to a subsequent user. They're not the first, and why would we give them the right to be the sole owner of a combination that existed before them and had been used before them and used after them? Let me ask you this. Why should the analytical point of departure be the deposit copy? Yeah, are you going to address that? Yes, I do want to address the deposit copy, and that's important. With respect to the deposit copy, Skidmore was not some sort of an outlaw. Section 13 of the Copyright Act specifically says that they're required to deposit, once it's published, two copies of the best edition of the work. It actually says thereof, but thereof refers back to the work. That's what's required to be deposited. And Merrill v. Tice, going back to 1888, made clear that if it's not in the deposit copy, it's not protected. Before Skidmore, it was very clear that it's not an outlaw. Before Skidmore, Unistrut in the First Circuit, 1960, made very clear that if it's not in the deposit copy, it's not protected by copyright. They dealt with catalogs there. And there was a 1942 – yes, Ronnie, we'll tell you about that. This, to some extent, is an issue of first impression in this circuit. So Skidmore – I mean, the Ninth Circuit and the First Circuit are interesting for our inquiry. But as a textual matter, I want to be sure I understand your position on deposit copy. The deposit copy is an objective showing of what is copyrighted. It shows it. And the Copyright Office itself, with the authority of Congress, has interpreted that in the compendiums going back. See, are you arguing that this is the statute, and that the statute requires us to do that, in the face of the fact that many other countries don't do that, and that we do our best to handle what happens when it is a copyright from another country, when we are here, as your opposing counsel has argued. And, you know, it's one thing to be together with the first and the ninth. It's another thing to do with what we do with all of the world. If the statute tells us or gives us guidance, that's what we follow. The statute, I think, tells you that the deposit copy with musical works – my colleague talked about other sort of protections for computer code, etc. Congress specifically made distinctions and authorized the register to make distinctions for bulky items, for computer code. But for musical works, it has always been the same. 1909 Act, 1976 Act, it has to be – the whole musical work has to be deposited. Not a piece of it, not an exemplar, the totality of it. Dealing with the foreign works, that's a matter of the accession to the Berne Convention. And that was to provide U.S. authors with the same protection in foreign countries that foreign authors have in those countries. And the cost of doing that was, in this country, foreign authors could pursue a copyright claim without registering. They could do that so that our authors could have protection in their countries. That was 1988, not 1973 and not 1909. I would add to that, that doesn't mean that it's a race to the bottom in this country, that we eliminate the registration requirement. And indeed, for foreign works, they are only entitled – if they want to get statutory damages, if they want to have attorney's fees, they, too, have to register and do a deposit. Otherwise, they don't have all of the remedies that are available under our Copyright Act. So Congress dealt with that. So is it in your position that the deposit copy rule from 1909 is good law that drives this case? It hasn't changed, Your Honor. When the 76 Act came in, the only thing that changed – well, there were a couple of things that changed. One was you no longer needed visible notation. And because you no longer needed visible notation, you could register a sound recording, which was not capable of being registered under the 1909 Act. And that would, if you properly reflected it – and I know that Judge Park got to hear some argument about filling in boxes – but if you properly registered it, it would protect the underlying composition, but it still required the totality of it. The composition had to be registered, and there had to be a deposit copy of the composition in a recorded form rather than in a sheet music form. But nothing has changed as to the 1999 Act. It remains the law. It remains consistent with the compendium. It's consistent with the Ninth Circuit. The Sixth Circuit has recently adopted the Ninth Circuit formulation. And it's nothing inconsistent with our law here either, that the deposit copy for music has control, should control. Otherwise, you're dealing with subjective arguments, much as my colleague advanced. It's what a musician might play. Well, musicians might play a different melody. They might change lyrics around. Is that now copyrighted, even if it's not in the deposit copy? No. You also said that a musician might, or an expert might tell you what a baseline might be. Their own expert said, well, it could be this baseline, but there are other possible baselines as well. If you stray from what the author registered, the deposit copy, which tells you what is protected, then you're into subjectivity, and you don't know what's protected, and you don't know what the claim is. And authors, future authors, are going to be subjected to, no, no, no, I intended to have this baseline. I know it's not there, but I intended it. Or I intended the melody to go this way. I know it's not there, but I intended it. Or you can have an expert say the same thing. I'm sorry to interrupt. I have a question about the posture of the case. What changed between Griffin, the jury verdict in Griffin, and summary judgment here? Shouldn't they sort of be decided the same way? Well, I think we haven't argued for collateral estoppel, although I believe it might have been applied against us had we lost in Griffin. We made the motion to re-argue six months before Griffin was tried, and we focused on a number of issues, including having a necessity of a number of elements, commonplace elements combined, in order to warrant protection. So what changed was we addressed very specifically the issues that we thought that Judge Stanton had erred on. Now, if you're asking me, was he influenced in any way by listening to all of the testimony at the Griffin trial, I'm not going to speculate. We all can speculate. I guess what I'm suggesting is if we affirm here and say that summary judgment was appropriate, then does that not suggest that Griffin really didn't need to go to trial at all? Well, I actually didn't think Griffin needed to go to trial, but I'm not sure that I— I'm going to fall on my sword. I'm not sure that I handled it correctly. We moved for summary judgment before we moved for the deposit copy being the full scope. It is not impossible for a judge to send a case to a jury, and then if a jury comes out in a way that the judge thinks was incorrect of the law to rule as a matter of law, that the jury couldn't do it. That is, the fact that something is sent to a jury doesn't bar a judge from making the opposite judgment if a jury doesn't come out that way as a matter of law. Your Honor, you're entirely correct, and I will tell you that I argued at the close of the plaintiff's evidence in the Griffin trial that we should get a judgment as a matter of law, and I renewed that at the end. And the judge made clear that he was—while he was sending it to the jury, I think he made clear as well. But we also know that if a judge sends it to a jury and the jury comes out the opposite way, the judge is very unlikely to come back and say, hey, I should have decided it the other way. Well, I took some confidence from it, but I was not going to bet my house on it. But I do think that the judge understood. But I don't know that the judge—and I don't know that he was or was not influenced by the evidence that he heard, by the jury verdict, but what I do believe is he took seriously the issues that we raised in our re-argument motion. We felt that he had made certain errors overlooking, for instance, that he had precluded their experts from offering evidence on whether it was unusual or not. He didn't address—I'll say this as well—he didn't address the fact that under the Feist formulation, these works are different. The two elements that they say are similar, the court progression and anticipation, are in fact different, and that's undisputed in the record, so that he could have, although he didn't reach it, that precise issue, which is even if they're sufficiently numerous and they're not, even if they're original and they're not, these two elements are expressed differently in these two works. So we had other bases for going there. Unless your honors have further questions, I think that I've exhausted or more than exhausted my time. Thank you, counsel. Thank you. We'll hear about it. Thank you. I've got a list, but obviously, your honors, if there's anything you want to ask me first, please feel free. So first things first, with respect to the prior uses or prior instances of the combination that were out in the world, the other side identified three, and again, I've detailed this, I think, in my reply brief in great detail. The other side identified three, and my experts, who were allowed to talk about prior art when dealing with their prior art, said one of them is not the same, and the other two were obscure sound recordings, which were sort of in bargain bin shelves, but that the original musical compositions differed. All that is to say that prior art in copyright is not the same thing as prior art in patent or the equivalent in trademark, just like the Copyright Office doesn't examine things like the Patent Office does and the Trademark Office does. Copyright Office takes in the deposits to check for minimal originality, and that's the data general case from the First Circuit actually goes into a lot of detail on this that both sides have talked about, and that Skidmore talked about, but the prior art, whereas in patent, prior art would knock you out, right? If somebody had already invented this television, I can't patent this television. That's not the way it works in copyright. The only reason prior art comes in here, and you don't need to have, an expert does not need to have prior art. They were using prior art to try to address the originality question. How common is this? And they found these three, we say two, songs from before 1973, and they say that's proof this combination was common. Before the Griffin trial, Judge Stanton looked at that and said, well, his experts don't agree. There's a dispute among the experts about, as a result, the commonality. As far as my experts being able to testify about commonality, Judge Stanton specifically said on SGA-19- Yeah, but it's perfectly possible that Judge Stanton or Rupp might well have said, as a matter of law, you lose, but didn't want to take a chance on getting reversed, and so sent it to a jury. And when the jury came out the way he would have done, he sat there happily. If a jury had come out the other way, we don't know what he would have done. That's entirely possible, and I actually agree with my colleague's analysis. I was sitting in that courtroom. It wasn't my case, but I was sitting in the courtroom, as he knows, and listening to that, and I heard the same thing. But I do think that Judge Stanton's mind was affected by the evidence he was hearing in the Griffin case. Because before, in an opinion that you have, he very clearly said, in my case, there's no bright line on numerosity. I'm not going to engage on this question of numerosity. It's not the law of this circuit. It's the law in the Ninth Circuit. It's not the law in this circuit. I'm not going to engage on it. Afterward, he repeated that there's no bright line rule, but yet said, I think these elements merge, and he tacked on that the combination is commonplace, whereas before he had said, there's a disputed issue of material fact as to whether the combination is commonplace. You have Dooling experts, which is why he denied summary judgment the first time, the second time, really, but why he denied summary judgment before Griffin, and he does not say anything in his re-argument opinion about new facts, new law, mistake of fact, mistake of law. He doesn't say anything about that. He simply says the opposite of what he said before, and I find that troubling, and we think it's error. If I can ‑‑ I have two seconds. If I could just try to go down my list, would that be all right? Not the whole list, if it's going to be more than that. Sure. I'll go as quickly as I can. I just want to point out that in terms of the 1909 Act, it's actually Sections 12 and 13 that are relevant to us because we actually sued on two registrations. One filed as a published work. One filed as an unpublished work, and interestingly enough, when these two were renewed in the Copyright Office, this is public record. This is not in the record, but it's public record. The Copyright Office records indicate that both are unpublished. When they talk about what has been renewed, they use the EU designation instead of the EP designation, indicating that both original registrations were actually unpublished. But I don't think it matters. I think 12 and 13 look at it the same way. Neither of them say, and this goes back to the point of what does the statute tell us, the statute does not tell us that we are constrained in terms of what the scope of copyright protection is. And it's not just the Foreign Works issue. It's also all the categories, the growing list of categories, 20 categories now, where the Copyright Office had said, oh, you don't need to file the whole thing. In all 20 of those categories, with U.S. Works, not Foreign Works, with U.S. Works, we litigated on the facts. People testify about what it is. Do you have any case of music in which a court has held that it is more than the original registration? I mean, we have several circuits that I like to ignore that have come out the other way. But do you have any case in which music was brought in and they came out the other way? Well, I would submit that the Three Boys music case from the Ninth Circuit, which we sometimes ignore, sometimes don't, but in that you asked if I had any case. That's the case in which I think the court did it the right way. The district court allowed the expert testimony to go to the jury about what the sheet music included. I can read from it for you, but I will not. It is 212 F. 3rd 477, starting around page 486. They go into great detail about how there was a dispute about what was and wasn't included in the sheet music. They nevertheless allowed the experts to testify. The jury believed the experts who were talking about there are more things here, and the Ninth Circuit said we're not going to disturb that jury verdict. That's what I think should have happened here. That's my touchstone case on that point. Thank you, counsel. Thank you both. And I would just say the other arguments in my brief are submitted. I didn't get to them. Thank you. Thank you both. Appreciate your advocacy. Thank you.